GRANVILLE S. WINDSOR, Plaintiff Below, Plaintiff in Error, *v.* ARTHUR S. HEARN, Executor of Mary C. E. McCready, deceased, Defendant Below, Defendant in Error.

(*June* 21, 1932.)

WOLCOTT, Chancellor, PENNEWILL, C. J., RICE and HARRINGTON, J. J., sitting.

*Frank M. Jones* for plaintiff in error.

*Daniel J. Layton* for defendant in error.

Supreme Court, No. 2, January Term, 1932.

WOLCOTT, Chancellor, delivering the opinion of the Court:

We do not find in the record of this cause any assignment of errors as required by *Rule* 20 of this Court. No point, however, has been made of the matter, and we accordingly pass it by. In the bill of exceptions grounds appear as laid in support of the two items of error presented and discussed on the briefs, and we proceed to an examination of them as fully as if they were formally assigned as error.

The first ground relied upon as showing error consists in the action of the court below in charging the jury as follows:

"We have heretofore, as you know, held that as a matter of law, the statement of the deceased, Mrs. McCready, that she had not paid Mr. Windsor was not sufficient to remove the bar of the statute of limitations, and that, therefore, the plaintiff is limited to a recovery for services for that period from September 16, 1927, being three years before the date of the commencement of this suit, down to July 27, 1930, the date of the death of Mrs. McCready, together with interest on said amount to the present day. * * *"

The plaintiff claimed compensation for services which extended over a period in excess of fourteen years. The court below in substance held that there being no sufficient evidence to show such an acknowledgment by Mrs. McCready of the debt as would remove the bar of the statute of limitations (*Revised Code Del.* 1915, § 4671), the plaintiff, if he recovered at all, could not in any event recover more than was a reasonable compensation for the last three years of services rendered immediately preceding Mrs. McCready's death. It is hardly necessary to state that the period of limitations applicable to such demands as the instant one is three years.

. The question, then, is—Was there any evidence before the jury which would justify the finding that Mrs. McCready ever made any acknowledgment in such terms as would show a reviving promise whereby the bar of the statute was lifted and the claim continued alive?

We have carefully reviewed the record and are of the opinion that no such evidence was produced. The testimony of three witnesses is relied upon as showing evidence sufficient to support a reviving acknowledgment. We now proceed to review their testimony.

One of the witnesses was Pearl Nichols. If it be conceded that the testimony she gave would support such an acknowledgment as would remove the bar of the statute, a question which we do not pause to consider, yet the alleged acknowledgment testified to by her was made not later than during the fall of 1926, four years before the action below was commenced. Not having been made within three years prior to the commencement of the suit, the testimony of Pearl Nichols, therefore, has no pertinency to the question.

The second witness whose testimony is relied upon to show an acknowledgment of the indebtedness by the deceased is Ella Morris. It appears from her testimony that in August, 1929, being within three years prior to the institution of the suit, the deceased returned by automobile from a visit to Ocean City, Maryland, and on her return the plaintiff rendered her some services in the way of driving the automobile, getting the baggage of the deceased into the house, and moving the porch rockers from her porch. On direct examination the witness testified that she said to the deceased—"Mrs. McCready, do you pay Mr. Windsor for these services?"—to which the deceased replied "Not yet; * * * I haven't yet." On cross-examination she said her question to Mrs. McCready was whether "she had paid Mr. Windsor for the services," to which the answer was "not yet." Of course, if the services referred to were

those which the plaintiff had just rendered, they were rendered within the three years' period and were covered by the judgment rendered in the case.

The last witness whose testimony is relied upon to show an acknowledgment of indebtedness by the deceased is Arthur Hearn. A careful reading of the evidence discloses the utmost extent to which the testimony of this witness goes is, that in July, 1929, he talked with the deceased and she told him, in the course of a conversation about her affairs, that "she had not paid Granville (meaning the plaintiff) anything for his services * * * she did not tell me anything about payment." He admitted that in a conversation with the attorney for the plaintiff, though he had not stated in words that the deceased had said the plaintiff would be taken care of, yet he had used words which, in substance, meant that.

Boiling down the testimony and stating it in the light most favorable to the plaintiff, it amounts to this—that within the statutory period of three years preceding the institution of the present action in the court below, the deceased said to one witness (Hearn) that she had never paid anything to the plaintiff for his services, said nothing about payment, and made no statement that plaintiff would be taken care of; and to another witness (Morris) the deceased said she had not yet paid the plaintiff for the services immediately rendered and used words from which the inference is possibly, though not clearly, deducible from the witness' examination in chief, that she was not in the habit of paying the plaintiff for "these services."

██ ██ We are asked to say that on this state of the record the court below was in error in refusing to permit the jury to find such an acknowledgment of indebtedness as would remove the bar of the statute as to that portion of the services which extended beyond the three year period. We are of the opinion that the court below committed no error in that regard.

In *Bell v. Morrison,* 1 *Pet.* 351, 360, 7 *L. Ed.* 174, Mr. Justice Story in discussing the statute of limitations used the following language:

"If we proceed one step further, and admit that loose and general expressions, from which a probable or possible inference may be deduced of the acknowledgment of a debt, by a Court or jury; that, as the language of some cases has been, any acknowledgment, however slight, or any statement not amounting to a denial of the debt; that any admission of the existence of an unsettled account, without any specification of amount or balance, and however indeterminate and casual, are yet sufficient to take the case out of the statute of limitations, and to let in evidence, *aliunde,* to establish any debt, however large, and at whatever distance of time; it is easy to perceive, that the wholesome objects of the statute, must be, in a great measure, defective; and the statute virtually repealed. * * *

"If there be no express promise, but a promise is to be raised by implication of law from the acknowledgment of the party, such acknowledgment ought to contain an unqualified and direct admission of a previous, subsisting debt, which the party is liable and willing to pay. If there be accompanying circumstances, which repel the presumption of a promise or intention to pay; if the expressions be equivocal, vague, and indeterminate, leading to no certain conclusion, but at best to probable inferences, which may affect different minds in different ways; we think they ought not to go to a jury as evidence of a new promise to revive the cause of action. Any other course would open all the mischiefs against which the statute was intended to guard innocent persons, and expose them to the dangers of being entrapped in careless conversations, and betrayed by perjuries."

In *Newlin v. Duncan,* 1 *Harr.* 204, 25 *Am. Dec.* 66, the Court of Errors and Appeals of this State used language to the effect that a mere acknowledgment of a subsisting demand or any recognition of an existing debt, is evidence of a promise to pay it. This manner of categorically stating the rule omits any reference to the degree of positiveness with which the acknowledgment must be shown or to the effect of the attendant circumstances as being inconsistent with and, therefore, repelling the implication of a promise to pay—these being qualifications of the rule which, according to *Bell v. Morrison, supra,* are necessary to be observed in its application. In *Newlin v. Duncan, supra,* it was not necessary for the Court of Errors and Appeals to elaborate upon the details of requirement necessary to be shown in order that the acknowledgment might

have the effect of a reviving promise, for the real point under consideration in that case, viz., whether the suit should be on the original obligation or on the new promise, did not call for such elaboration.

In the later case of *Robinson v. Burton,* 1 *Houst.* 541, the Court of Errors and Appeals after repeating the rule categorically announced by it in *Newlin v. Duncan, supra,* proceeded further to say that:

"The principle seems to require that the acknowledgment should be of a subsisting or existing debt, and recognizing an obligation to pay it—a debt originally just and still due. 2 *Greenl. Ev., Sec.* 441. And to properly value the force of such admissions, the circumstances under which they are made may be considered."

By this language, the Court of Errors and Appeals placed itself in substantial accord with *Bell v. Morrison,* from which we have quoted *supra.* Professor Williston in his work on Contracts (*Section* 161) states that ever since *O'Court v. Cross,* 3 *Bing.* 329, it has been recognized in England and generally in the United States,

"That the effect of an admission or acknowledgment is merely that of evidence of a promise implied in fact. And if, taking all the circumstances into account the admission does not indicate an intention to pay, no liability arises from it."

In the instant case the testimony not only fails to show an unqualified and direct admission of a previous subsisting debt, but in our judgment it cannot be said to show so much even as a vague or loose admission. The most that we can gather from the testimony is that the deceased stated that she had not paid the plaintiff for his services. That sort of statement certainly cannot be said to reveal an acknowledgment of a subsisting debt or obligation to pay. Even if it be conceded that the deceased told the witness Hearn in July, 1929, that she had not yet paid the plaintiff and that he would be taken care of (which it should be said is not Hearn's testimony in the case—he simply says that he stated something like that to the plaintiff's attorney on one occasion) yet conceding that to have been his testimony,

it does not show an acknowledgment of an obligation to take care of or to pay the plaintiff. It is entirely consistent with, if it does not clearly indicate, a purpose to bestow upon him a gratuity. Such a statement if made and if it be conceded *arguendo* to contain some remote sense of obligation, lacks the quality of being "unqualified and direct" (*Bell v. Morrison, supra*), or "unqualified and unconditional" (*Chambers v. Fennemore's Adm'r, 4 Harr.* 368), or "direct and unqualified" (*Greenman v. Wilson's Ex'rs, 4 Houst.* 14), which is necessary if a promise to pay is to be implied. In *Schuchler v. Dickson's Adm'r, 5 Penn.* 42, 62 *A.* 261, 263, the evidence was far stronger in its implications of an acknowledgment of an existing and subsisting debt than is found here. In that case the deceased, when asked by the plaintiff to pay, replied that he did not have the money to spare, "the farm is big enough to pay you," that he, the deceased, said to another witness that he did not have the money to pay the bill and that he requested the plaintiff to wait until he could get it, the farm being "big enough to pay the bill." This being the evidence, the court instructed the jury that there was no testimony of any acknowledgment of the part of the bill for services claimed to be barred by the statute as a subsisting debt, which would remove the bar.

We can find no evidence in the case at bar from which the jury would have been justified in finding an acknowledgment of a subsisting debt from which an obligation to pay it can be implied. The court below, therefore, committed no error in instructing the jury that their verdict if for the plaintiff, could not cover compensation for a greater length of time than three years immediately preceding the institution of the suit.

Error is also alleged to have been committed by the Court below in refusing the plaintiff's application for a new trial. The ground on which the motion was based was that of evidence newly discovered since the trial.

The alleged new evidence was shown to consist of certain statements alleged to have been made by the deceased from which an acknowledgment of the indebtedness sufficient to remove the bar of the statute would be made manifest. We deem it unnecessary to consider the question of whether the alleged statements were of such character as to evidence a reviving acknowledgment. We say this because for other reasons it is clear that the trial court was clearly justified in refusing a new trial on the ground of newly discovered evidence.

In *State v. Lynch*, 32 *Del.* (2 *W. W. Harr.*) 600, 128 *A.* 565, 568, the present Chief Justice stated one of the necessary requirements for the granting of a new trial on the ground of newly discovered evidence to be, "that it [the new evidence] has been discovered since the trial, and could not have been discovered before by the exercise of due diligence." This we believe is the universally accepted rule. It is so well settled that no authorities need be cited to support it. It alone, regardless of the possible lack of significance of the newly discovered evidence, sufficiently justified the court below in its refusal to grant the plaintiff's application for a new trial.

The witness from whom the new evidence was to be evoked, was a nurse in attendance upon the deceased from October, 1927, to December, 1927. The plaintiff knew the witness. Being an almost daily caller upon the deceased and looking generally after her affairs, and, therefore, knowing as he must have known of the fact of the nurse's employment, it is difficult to understand how, if he had been in the exercise of diligence in preparing his case for trial, he could have overlooked the matter of inquiring from her whether she knew of any statements made by the deceased which might be of assistance to him in supporting his bill for services. The plaintiff in his affidavit in support of his application gives no explanation of why he could not have learned of the new witness and her testimony before the

trial. Not only so, but his affidavit does not, even in cate-
gorical terms without amplifying explanation, allege that
the new evidence could not have been discovered by the
exercise of due diligence.

On this showing, the court below was correct in its
ruling that the application for a new trial should be denied.

The judgment below will be affirmed.